IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AIRCRAFT MECHANICS FRATERNAL ASSOCIATION, § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 3:15-CV-3642-L |
| § | |
| SOUTHWEST AIRLINES CO., § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff AMFA's Motion for Summary Judgment (Doc. 38), filed January 22, 2016; and Defendant Southwest Airlines Co.'s Cross Motion for Summary Judgment (Doc. 40), filed February 12, 2016. After careful consideration of the motions, briefs, appendix, record, and applicable law, the court **grants** Defendant Southwest Airlines Co.'s Cross Motion for Summary Judgment; **denies** Plaintiff AMFA's Motion for Summary Judgment; and **dismisses with prejudice** this action.

### I. Procedural and Factual Background

On November 11, 2015, Plaintiff Aircraft Mechanics Fraternal Association ("Plaintiff" or "the Union") brought this action against Defendant Southwest Airlines Co. ("Defendant" or "Southwest") to vacate a labor arbitration award ("Bloch Award") pursuant to the Railway Labor Act ("Act" or "RLA"), 45 U.S.C. § 151 *et seq*. Plaintiff is a labor union acting on behalf of the mechanics ("Mechanics") employed by Southwest. In Plaintiff's Petition to vacate the Bloch Award, the Union contends that Arbitrator Richard Bloch ("Arbitrator Bloch") recognized but did not follow a previous arbitration award—the Sauter Award. The Union contends that Arbitrator Bloch, therefore, violated the RLA and exceeded his jurisdiction under the parties' Collective

**Memorandum Opinion and Order - Page 1**

Bargaining Agreement ("CBA"), as the RLA and CBA require the Sauter Award to be treated as final and binding. The Union further contends that the court should vacate the Bloch Award and remand this action for another arbitration.

The parties stipulated to the admission of the System Board of Adjustment ("Board") proceedings into the record and agreed that no discovery was necessary. Further, they agreed that the issues presented in the Petition should be addressed through cross-motions for summary judgment. On January 22, 2016, Plaintiff moved for summary judgment. Defendant filed a cross-motion for summary judgment and a response to Plaintiff's motion for summary judgment on February 12, 2016. Plaintiff filed its reply to Defendant's motion for summary judgment on February 19, 2016. Defendant filed its reply to Plaintiff's motion for summary judgment on February 26, 2016. Both parties agree that there is no genuine dispute as to any material fact and that there is a legal dispute that can be resolved by summary judgment based on the applicable law.

The court now sets forth the facts in accordance with the standard in Section II of this opinion. Plaintiff and Defendant are parties to a CBA that governs the terms and conditions of the Mechanics' employment. Article 21 of the CBA sets forth the process for resolving a grievance arising over the interpretation or application of the contract. First, the aggrieved employee must discuss a possible solution for the grievance with his or her supervisor or manager. J.A. 597. The supervisor or manager then issues a grievance decision. *Id*. During the discussion with his or her supervisor or manager, the aggrieved employee may be represented by his or her shop representative or local airline representative. *Id*. The decision reached in this first step of the grievance procedure "shall not constitute a precedent of any kind unless otherwise agreed to by the Union and [Southwest]." *Id*. The parties may also resolve a grievance dispute "by the union

**Memorandum Opinion and Order - Page 2**

or carrier agreeing to a voluntary settlement of the grievance, or by the grievant withdrawing the grievance" Pl.'s Pet. 6-7. If the parties are unable to resolve the dispute through discussion, the aggrieved employee's next step is to submit an official Union grievance form to his or her supervisor or manager. J.A. 597. The Union may appeal the supervisor or manager's grievance decision to the Board. *Id*. The Board consists of one member designated by the union and one member designated by Southwest. Pl.'s Pet. 7. Pursuant to Articles 21 and 22 of the CBA, a Board's resolution of a grievance is "final and binding" unless the parties agree otherwise. *Id*. If the Board is deadlocked, Article 22 allows the Union to appeal the Board's decision to an arbitrator. *Id*. Under Article 22, a single impartial arbitrator resolves the grievance after a contested arbitration hearing. *Id*.

Article 2, Section 12 of the CBA, provides an expedited process for resolving subcontracting grievances. Under Article 2, Section 12, the Union may invoke expedited arbitration before the Board sitting with a neutral arbitrator, after the matter is grieved and the parties have attempted "to resolve their dispute in conference." J.A. 543. "Article 2.12 operates in conjunction with Article 22." Def.'s Resp. to Ct. Order on Clarification 2.

A dispute arose between the parties in 2014 as to whether Southwest was entitled to assign nonmaintenance brake riding work to a third-party vendor instead of using the Mechanics. Brake riding is a process of controlling an aircraft while it is being towed. The aircraft is typically "powered down and empty of passengers." *Afoa v. China Airlines Ltd*, No. C11-0028-JCC, 2013 WL 12066088, at *1 (W.D. Wash. Apr. 12, 2013).

> When a plane is being towed, one mechanic is in the cockpit riding the brakes of the aircraft. Another mechanic drives the tow truck, which pulls or pushes the aircraft, depending on which direction the tow truck is facing. One or two mechanics act as wing walkers. During towing, it is necessary for either the mechanic driving the tow truck or the mechanic in the cockpit to be in radio contact

**Memorandum Opinion and Order - Page 3**

>with the control tower in order to receive directions and instructions regarding when
>and where it is safe for the towing to proceed.

*Sprague v. United Airlines, Inc.*, No. CIV.A.97-12102-GAO, 2002 WL 1803733, at *15 (D. Mass. Aug. 7, 2002). Performing the brake riding work requires "powering the aircraft[']s APU [auxiliary power unit] and hydraulics, [and] configuring radios and communicating with the tug operator and/or tower." J.A. 1760-61. In late 2014, Southwest notified the Union that it would be assigning a portion of its nonmaintenance brake riding work to a third-party vendor. As a result, Plaintiff received hundreds of grievances against Southwest from its Mechanics. The Mechanics contended that the nonmaintenance brake riding, subject to some limitations, was within the Mechanics' classification under the CBA's Scope Clause, and, therefore, Southwest was prohibited from contracting the work to a third-party vendor. Southwest disagreed. The parties were unable to reach a grievance settlement; therefore, they agreed to resolve the issue through expedited arbitration pursuant to Article 2, Section 12 of the CBA. On January 30, 2015, the Union designated a lead grievance for the class action grievance to move to arbitration. Def.'s Resp. to Ct. Order on Clarification 2. The parties agreed to select Arbitrator Bloch as the neutral arbitrator to sit on the Board. As the parties also agreed that the matter would be expedited, the arbitrator was to issue a decision no later than thirty days after the parties' submissions.

To address the parties' dispute, Arbitrator Bloch held hearings on May 6, 7, 18, and 19, 2015. In its argument before Arbitrator Bloch, the Union contended that the terms of a 2001 System Board of Adjustment Award[1] ("Sauter Award") were decisive with respect to the parties'

---

[1] At times, Plaintiff refers to the Sauter Board's decision as an award or disposition, and at other times Defendant refers to it as a grievance. Whether the Sauter Board's decision is called an award, disposition, or grievance has no effect on whether the decision is final and binding, as the CBA clearly states that the Board's "finding or decision shall be final and binding upon the [Union], [Southwest], and the individual [e]mployee or [e]mployees to such dispute." J.A. 598.

**Memorandum Opinion and Order - Page 4**

dispute. The Sauter Award resolved a dispute as to when non-Mechanic employees could perform brake riding. Mechanic Ken Sauter and another Mechanic grieved the issue, and, as the issue was not resolved through the grievance process, they appealed to the Board. On October 17, 2001, the Board disposed of the dispute with the following decision:

> At locations and shifts where there are no SWA Mechanics, Ramp Supervision Personnel may ride the brakes for repositioning. However, when [and] if such stations are manned by SWA Mechanics, this work will be done by SWA Mechanics.
>
> Per Article 2 para 3.
> [Southwest] will continue to train Ground Operations Supervisor from stations without Southwest Mechanics to brake ride. It is mutually agreed that when and if Mechanics are stationed that SWA Mechanics will perform said duties. Only exception is if no Mechanic is available on a particular shift, then [Ground Operations Supervisors] will assist in the movement of the aircrafts.

J.A. 1772-3.

Arbitrator Bloch considered the Sauter Award and determined that with respect to brake riding it "in no way settles the issue on exclusive jurisdiction throughout the Southwest system. It may, with equal force, be seen as the parties' agreed on rules as to the orderly management of a shared task. Whatever the underlying intent [of the Sauter Award], the Disposition is not one that survived subsequent labor agreements." J.A. 1774. In deciding that the Sauter Award was inapplicable, Arbitrator Bloch stated that the Sauter Award is not a "global prohibition on the assignment of non-Mechanics" but instead "reflects these parties' practice of [] recognizing the Mechanics' ownership of the task in some circumstances," and identifies other circumstances when others may perform the nonmaintenance brake riding. J.A. 1773. Arbitrator Bloch reasoned that the Sauter Award reflects a compromise and the "'availability' proviso may reasonably be read as a 'first refusal' option" for Mechanics, which does not settle the issue of exclusive jurisdiction over nonmaintenance brake riding. J.A. 1774.

Further, Arbitrator Bloch determined that the Sauter Award is inapplicable to the parties' dispute, because subsequent labor agreements between the parties did not incorporate brake riding into the explicit Scope Clause that discusses maintenance tasks for Mechanics. Arbitrator Bloch also stated that the continued practice of shared brake riding made it clear that "the overall understanding was to use whatever trained personnel would be 'available' to keep the operation going." J.A. 1775-76. For these reasons, Arbitrator Bloch found that the Sauter Award did not apply to the parties' dispute, and, therefore, it cannot be dispositive of the parties' dispute.

Moreover, Arbitrator Bloch interpreted the language of the CBA to entitle Mechanics to perform all maintenance-related brake riding work; however, he found they were not entitled to perform all nonmaintenance brake riding work. Arbitrator Bloch reasoned that there were numerous situations in which individuals who were not Mechanics had performed nonmaintenance brake riding work. Arbitrator Bloch stated that the evidence demonstrated that the CBA's Scope Clause "ties Mechanics' jurisdiction to the requirement that their protected tasks be maintenance related," and, therefore, nonmaintenance brake riding is not covered by the CBA. J.A. 1778. Accordingly, Arbitrator Bloch denied the Union's grievance.

## II. Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In this matter, the parties have agreed that the facts are not in dispute. As the facts are not in dispute, the only issues that remain are questions of law that the court is required to address.

### III. RLA Standard of Review for Board Awards

The United States Supreme Court explained that Congress has distinguished two classes of controversy in the Act: major disputes and minor disputes. *Consolidated Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302 (1989). "[M]ajor disputes seek to create contractual rights, [and] minor disputes [seek] to enforce them." *Id.* (citation omitted). If a major dispute occurs, the Act requires the parties to undergo a process of bargaining and mediation. *Id.* A minor dispute, however, is subject to compulsory and binding arbitration. *Id.* at 303; *see also Allied Pilots Ass'n v. American Airlines*, 898 F.2d 462, 465 (5th Cir. 1990) (finding that a case involving a minor dispute is subject exclusively to resolution by arbitration under the RLA). The minor dispute category "is predicated on § 2 Sixth and § 3 First (i) of the Act, which set forth conference and compulsory arbitration procedures for a dispute arising or growing 'out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Consolidated Rail Corp.*, 491 U.S. at 302. The Union and Southwest do not contest the classification of their dispute; instead, they agree that their dispute is minor under the RLA.

"Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (citation omitted). Due to the dispute's classification as minor, the parties' dispute is subject to compulsory and binding arbitration before the Board. *Continental Airlines, Inc. v. International Bhd. of Teamsters*, 391 F.3d 613, 617 (5th Cir. 2004) (citation omitted). Judicial review of [] Board orders is limited to three specific grounds: (1) failure of the [] Board to comply with the requirements of the [Act]; (2) failure of the [] Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. *Union Pac. R.R. Co.*, 439 U.S. at 93 (citing 45 U.S.C. § 153 First(q)).

When an arbitrator exceeds his or her jurisdictional authority as circumscribed by the CBA, the court must vacate or modify its award. *Bruce Hardwood Floors v. UBC, Southern Council of Industrial Workers, Local Union No. 2713,* 103 F.3d 449, 452 (5th Cir. 1997) (citation omitted). An arbitrator's decision exceeds his or her jurisdiction when it is "so unfounded in reason and fact, so unconnected with the wording and purpose of the [CBA] as to manifest an infidelity to the obligation of the arbitrator." *Farris v. Union Pac. R.R. Co.*, 396 F. App'x 125, 128 (5th Cir. 2010) (alteration in original) (internal quotation marks and citation omitted). Stated another way, an arbitrator may not "dispense his own brand of industrial justice[,]" and when his words "manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *W. R. Grace & Co. v. Local Union No. 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 652 F.2d 1248, 1254 (5th Cir. 1981) (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

The arbitrator's decision must "draw its essence from the collective bargaining agreement." *Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. & Energy Workers Int'l Union, Local 4–1201,* 480 F.3d 760, 764–65 (5th Cir. 2007) (internal quotation marks and citation omitted). An arbitration award draws its essence from the CBA "so long as it is 'rationally inferable' in 'some logical way' from the agreement." *Folger Coffee Co. v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am.-UAW, Local Union No. 1805,* 905 F.2d 108, 110 (5th Cir. 1990).

The Union contends that two grounds exist for vacating the Bloch Award, because: (1) Arbitrator Bloch failed to comply with the RLA when he did not recognize the Sauter Award as final and binding; and (2) he acted outside his jurisdiction because his ruling bears no rational

relationship to the CBA. The parties move on cross-motions for summary judgment to determine whether Arbitrator Bloch complied with the RLA or exceeded his jurisdiction as a matter of law.

## IV. Discussion

### A. The Issue

Arbitrator Bloch framed the issue as: "Does the Company violate the Collective Bargaining Agreement by assigning non-bargaining unit employees, under certain circumstances, to perform brake riding functions?" The parties do not object to how the issue was framed.[2]

### B. Southwest's Motion for Summary Judgment

Defendant's brief combined its cross-motion for summary judgment and its response to the Union's motion for summary judgment. The court will first address the arguments raised in Defendant's brief that relate to its motion for summary judgment. Although the court addresses Southwest's motion first, it only does so after it undertook a painstaking analysis of both summary judgment motions and decided that Southwest should prevail.

#### 1. Statutory Bases to Vacate the Bloch Award

##### a. Complying with the RLA by Recognizing the Sauter Award as Final and Binding

Southwest contends that the Bloch Award complies with the RLA, and, therefore, there is no statutory basis for the court to vacate the award. Southwest contends that the Union is attempting to impermissibly relitigate the final and binding Bloch Award because it is dissatisfied that Arbitrator Bloch determined that the Sauter Award was inapplicable to or not governed by the parties' dispute.

---

[2] Further, the parties agree that the term non-bargaining members refers to individuals who are not represented by the Union.

**Memorandum Opinion and Order - Page 9**

The Union contends that Arbitrator Bloch failed to comply with the Act when he did not apply the Sauter Award as final and binding with respect to the disposition of the parties' brake riding issue. The Union argues that Arbitrator Bloch recognized that the Sauter Award was granted by a previous Board, and, therefore, he should have applied its holding as final and binding. The Union argues that instead of applying the Sauter Award as final and binding, Arbitrator Bloch determined that it did not survive subsequent labor agreements. The Union contends that this determination demonstrates that Arbitrator Bloch refused to recognize the Sauter Award as final and binding. Further, the Union argues that the Sauter Award "was categorically excluded from even the possibility of [being treated as precedence for the parties' dispute,] because it was not treated as final and binding." Pl.'s Reply Br. Summ. J. 4.

Southwest counters that Arbitrator Bloch did consider the Sauter Award, as his analysis contained a detailed section explaining why the Sauter Award did not apply to the parties' dispute. Southwest also contends that the Board had authority to interpret and decide the amount of precedential weight, if any, to be given to the Sauter Award. Southwest contends that the Union's argument supports this position, because the Union admits that an arbitrator may distinguish prior awards and states that it does not presume to dictate what weight the arbitrator assigns to any award. Further, Southwest contends that the Union has not presented any authority to support its position that the court should vacate the Board's decision because it did not adequately interpret or assign precedential weight to a prior Board award. Southwest argues that the Union can provide no such authority because none exists. Southwest contends that if a district court were allowed to weigh the adequacy of an arbitrator's analysis, such authority would conflict with Fifth Circuit precedent that grants the Board's broad jurisdiction to resolve minor issues without secondary oversight from federal courts.

Southwest further contends that the Board complied with the RLA when it interpreted the meaning and effect of the Sauter Award and determined that it did not prohibit nonmaintenance brake riding being performed by individuals who were not Mechanics. Southwest contends that the Board itself decides whether to apply a prior Board award in future disputes. Moreover, Southwest contends that whether a Board award has an effect similar to *res judicata* or *stare decisis* is not within the purview of the district or appellate courts to decide but an issue for the Board to determine. Southwest also contends that the Union has not shown that the Board's decision violated any provision of the RLA and that the text of the Board's award does not support the Union's assertion that the Bloch Award viewed the Sauter Award as not final and binding.

Under the RLA, "unless [the court] find[s] that an adjustment board's arbitral award is 'wholly baseless and completely without reason,' [the court] must affirm the Board's decision." *Mitchell v. Continental Airlines, Inc.*, 481 F.3d 225, 231 (5th Cir. 2007) (citation omitted). Furthermore, "national policy favors the final settlement of labor disputes outside of the judicial process,[] and '[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.'" *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 783 (5th Cir. 2012) (citations omitted). Both parties acknowledge that under the Act an arbitration award is final and binding; however, they differ with respect to how Arbitrator Bloch interpreted the Sauter Award.

The court finds the Union's arguments unpersuasive, as it mischaracterizes the decision of Arbitrator Bloch. Arbitrator Bloch determined that the Sauter Award was inapplicable to the parties' dispute; therefore, he did not have to apply it as final and binding. The parties disputed whether Southwest may assign nonmaintenance brake riding work to third-party vendors instead of using the Mechanics. Arbitrator Bloch held that "nothing in that negotiated resolution [of the

Sauter Award] reflects an existing right on the part of Mechanics to own non-maintenance related brake riding exclusively, nor does it create such right." J.A. 1774. Further, Arbitrator Bloch determined that based on "the bargaining history of later contracts and, significantly, on the practice of the parties in more recent years," the Sauter Award did not apply, as it did not "survive[] subsequent labor agreements." *Id*. As Arbitrator Bloch determined that the Sauter Award did not apply, he was not required to consider it as a final and binding decision that is dispositive of the parties' dispute.

The court's review of the Bloch Award is limited to determining whether it complied with the RLA and CBA. "The award is not, however, tested by judicial review of the legal principles applicable or the application of some sort of clearly erroneous test to the findings of the fact." *New Orleans S.S. Ass'n v. General Longshore Workers*, 626 F.2d 455, 468 (5th Cir. 1980). The court determines that Arbitrator Bloch found that the Sauter Award did not apply to the parties' dispute, as it did not prohibit non-Mechanics from performing brake riding work. The court, therefore, determines that Arbitrator Bloch complied with the RLA when he determined that the Sauter Award was inapplicable to the parties' dispute, and Plaintiff has not asserted an appropriate basis for vacating the Bloch Award.

### b. Whether the Board Acted Within Its Jurisdiction

Southwest contends that the Board did not exceed its authority by determining that the Sauter Award was mooted by bargaining history and years of mixed work practices on brake riding work. Southwest argues that the Board appropriately considered the CBA's plain language on the Union's work jurisdiction and did not subtract contract language in violation of Article 22, Section 3. In support of its position, Southwest emphasizes how the Board began its analysis with the plain text of Article 2, Section 2, which defines the scope of the Union's work jurisdiction.

Southwest contends that the Board made a distinction between maintenance and operational repositioning brake riding.

The Union contends that as the Bloch Award ignores clear and unambiguous provisions in the parties' contract, and that, therefore, the court may and should vacate the award and remand the matter for another arbitration on the ground that the Board exceeded its jurisdiction. Plaintiff also contends that Arbitrator Bloch refused to regard the Sauter Award as final and binding when he, contrary to the terms of the contract, determined that it was not incorporated into subsequent agreements. The Union argues that this, as a matter of law, demonstrates that the Board exceeded its jurisdictional authority.

Southwest counters by arguing that the Union does not identify a specific provision of the CBA that was ignored. To emphasize this point, Southwest also argues that the Sauter Award was never codified into the CBA text. Southwest contends that the Union has not asserted an appropriate basis to vacate the Bloch Award. Southwest contends that the Board operated within its jurisdiction as described in Article 22, paragraphs two and three of the CBA, as (1) the award presented the contractual issue identified by the parties; (2) the Board provided each party with a full opportunity to present evidence and argument; and (3) the Board issued a final and binding decision. Southwest contends that Arbitrator Bloch's analysis is not wholly baseless or completely without reason; therefore, his decision complied with the Act and CBA.

The court determines that the Bloch Award draws its essence from the CBA. Notably, courts provide arbitrators a great deal of judicial deference, and "a court must affirm an arbitral award as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005). That deference, however, ends at the point "whe[n] the arbitrator exceeds the

**Memorandum Opinion and Order - Page 13**

express limitations of his contractual mandate." *United Steel v. Delek Ref., Ltd.*, 575 F. App'x 330, 334 (5th Cir. 2014) (quoting *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989)). That point does not exist in this case, as the Bloch Award stays within the contractually mandated limitations of the parties' CBA. The Bloch Award's reasoning that the Sauter Award is inapplicable is based on rational inference from the text of the Sauter Award and how the parties have applied the Sauter Award. Moreover, the Bloch Award's analysis makes logical inferences about the parameters of Article 2 of the CBA, which describes the Mechanic's jurisdiction over areas of work. Further, as discussed previously, the Bloch Award expressly considered whether and to what extent the Sauter Award applied to the parties' dispute; therefore, the arbitrator did not exceed his jurisdiction.

### 2. Objection to the Timeliness of the Bloch Award

Plaintiff contends that Arbitrator Bloch exceeded his jurisdiction when he failed to provide a timely decision as required by the CBA. In response to the Union's timeliness objection, Southwest contends that this objection has been waived. Southwest contends that the Union waived its objection by waiting to object until after it received the adverse award. Further, Southwest contends that the Union has not demonstrated that the timeliness of the decision was expressly jurisdictional under Article 2, Section 12 of the parties CBA, or that it suffered any unfair prejudice from the award being issued in October.

The Union counters that it waited to object until it learned that the arbitrator exceeded the scope of his jurisdiction, not because it received an adverse ruling. Further, Plaintiff contends that it did not object earlier because it did not want to risk alienating the arbitrator. Plaintiff argues that it did not per se waive its objection and that the court has discretion to decide whether it has waived the objection.

**Memorandum Opinion and Order - Page 14**

With respect to the issue of waiver, the "failure to challenge the jurisdiction of the arbitrators until after the adverse decision [is] entered amount[s], as a matter of law, to a waiver." *Lodge No. 725, Int'l Ass'n of Machinists v. Mooney Aircraft, Inc.*, 410 F.2d 681, 683 n.4 (5th Cir. 1969). In *Mooney*, the court reasoned that "to hold that the company could wait 44 days without protesting the failure of the arbitrator to render his decision and then, when the adverse award was handed down to allow the company to attack it on these grounds would run counter to the express federal labor policy in favor of encouraging arbitration." *Id*. at 686. The parties submitted their closing briefs on July 10, 2015, and the CBA required that a decision be issued 30 days later on August 10, 2015. Arbitrator Bloch, however, did not issue his decision until October 20, 2015. Plaintiff had over two months to raise their objection to the untimeliness of the Bloch Award. Similar to *Mooney*, Plaintiffs did not object to the timeliness of the Bloch Award until after it received the adverse ruling. Accordingly, the court determines that Plaintiff has waived its objection, and the objection is **overruled**.

### C. The Union's Motion for Summary Judgment

The court has determined that no legal basis exists for vacating the Bloch Award and that Southwest is entitled to summary judgment. The court, therefore, must deny the Union's cross-motion for summary judgment, as granting the relief sought in that motion would conflict with the court granting summary judgment in favor of Southwest. In other words, granting both motions would result in inconsistent rulings by the court.

## V. Conclusion

For the reasons stated herein, the court determines that there is no legal basis for vacating the Bloch Award, as it complied with the RLA and CBA in determining that the Sauter Award did not apply to the parties' dispute, and it was within Arbitrator Bloch's jurisdiction because the

ruling had a rational relationship to the CBA.  Accordingly, the court **concludes** that Southwest is entitled to judgment as a matter of law regarding the Bloch Award.  The court, therefore, **grants** Defendant Southwest Airlines Co.'s Cross Motion for Summary Judgment; **overrules** Plaintiff's objection; **denies** Plaintiff AMFA's Motion for Summary Judgment; and **dismisses with prejudice** this action.  The court, pursuant to Federal Rule of Civil Procedure 58, will issue judgment by separate document.

**It is so ordered** this 13th day of July, 2017.

                                            Sam A. Lindsay
                                            United States District Judge